
RECEIVED
JAN 08 2025
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:24-CV-402-M-BM

| | |
|---|---|
| PAMELA LETTS, ) | |
| Plaintiff, ) | |
| v. ) | **PLAINTIFF'S OPPOSITION TO** |
|  ) | **DEFENDANTS' OBJECTIONS TO** |
| AVIDIEN TECHNOLOGIES, INC., ) | **MAGISTRATE MEYERS'** |
| METTLER TOLEDO RAININ, LLC, and ) | **MEMORANDUM AND** |
| METTLER -TOLEDO INTERNATIONAL ) | **RECOMMENDATION** |
| INC. | |
| Defendants. | |

*Pro-se* Plaintiff, Pamela Letts, respectfully submits this Opposition to Defendants' Objections to the Memorandum and Recommendation ("M&R") issued by Magistrate Judge Brian S. Meyers on December 16, 2024 [DE-30][1]. Plaintiff also addresses Defendants' subsequent filing of Exhibit A (Mr. David E. Kirtley, General Counsel-Americas for Mettler Toledo's Declaration), purportedly inadvertently omitted from Defendants' Objection to the M&R filing.

In his Memorandum and Recommendation, Magistrate Judge Meyers correctly recommended that Plaintiff's Motion to Remand [DE-21] be GRANTED and that Defendants' Motion to Dismiss [DE-8] be DENIED AS MOOT, finding that Defendants failed to meet their burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, for diversity jurisdiction purposes. Defendants now object, insisting they have satisfied

---

[1] All citations to documents using the docket entry number [DE-] rather than the page number of original documents are taken directly from Magistrate Judge Myers' Memorandum and Recommendation, as Plaintiff is not using CM/ECF system. If a docket entry number and/or the assigned docket page number is not cited in the M&R, Plaintiff cites the original document and/or the actual page number.

the jurisdictional threshold. However, their arguments remain speculative and unsubstantiated, and the late-filed declaration from in-house counsel fails to cure these deficiencies.

For the reasons set forth in Plaintiff's Motion to Remand [DE-21], and throughout this Opposition to Defendant's Objections to Magistrate Meyers' M&R, [DE-30], Plaintiff respectfully requests that the Court OVERRULE Defendants' Objections and ADOPT Magistrate Judge Meyers' M&R in its entirety.

### JUSTIFICATION FOR OPPOSING DEFENDANTS OBJECTIONS

The M&R correctly concludes that Defendants, as the removing parties, did not demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. [DE-30, pg. 15–17]. Magistrate Judge Meyers carefully reviewed the record and highlighted Defendants' reliance on speculation and inferences, rather than providing concrete proof of valuation or damages.

The Defendants objections to the M&R continue to reiterate arguments already presented and addressed by Magistrate Judge Meyers. They contend that Plaintiff's alleged 20% equity stake in Avidien, combined with punitive damages or withheld commissions, surpasses the $75,000 jurisdictional threshold. Yet, as the M&R notes, the Defendants', who bear the burden of proof as the removing party, provide no concrete evidence as to Avidien's equity value, such as the Avidien purchase agreement, final sales contract, or financial statements and accounting records to justify their valuation; nor do they provide Avidien's sales reports for the relevant timeframe, Avidien microPro sales data for the relevant timeframe, Avidien's customer list, Avidien customer purchase orders, Plaintiff's sales and commission records from 2021, or offer anything other than speculation as it relates to determining the value of Plaintiff's alleged withheld commissions and unused company holidays. See [DE-27] at 4. Without such information, the M&R [DE-30, pg.15] properly found that *"there is no information from which to reasonably infer the monetary value of her alleged withheld commissions...(and) unused company holidays.[See DE-27] at 4. Moreover, "courts [including this one] have repeatedly ruled that a demand for punitive damages, without more, is insufficient to establish that the amount in controversy exceeds $75,000." Matt v. Fifth Third Bank, Inc. No.5:18-CV-101-BR, 2018 WL 3846310, at \*3 (E.D.N.C. Aug. 13, 2018)."*

2

### "Overinclusive Evidence" Argument

Defendants claim on Pg. 2 of their Objections to Magistrate Meyers Memorandum and Recommendation, hereinafter referred to as "M&R Objections", that a removing Defendant can use "overinclusive evidence" to show the amount in controversy. Yet, as Magistrate Judge Meyers rightly determined, *"Defendants have not pointed to evidence that the amount in controversy in this case exceeds $75,000"* [D.E.30 pg. 16] let alone provided overinclusive evidence. Their submission falls well short of a "preponderance of the evidence."

### Defendants' Reliance on "Inferences" Contradicts Their Own Position

In addition to stating on pg. 2 of their M&R Objections that *"...A removing defendant can use overinclusive evidence to establish the amount in controversy so long as the evidence shows that it is more likely than not that a fact finder might legally conclude that damages will exceed the jurisdictional amount;"*. Practically in the same breath - a few lines further in their M&R Objections on Pg. 3, Defendants contradict this position by stating that *"such a precise evaluation is not necessary to estimate the value of the shares or the amount in controversy in this case"*. Now, after the M&R was served on Plaintiff and Defendants, Defendants claim that that Magistrate Judge Myers' findings and recommendations were *"erroneous"* M&R Objections, pg. 2"

Defendant's false inferences, contradictory statements, illogical conclusions, and lack of factual evidence are pervasive throughout Defendants' M&R Objections, and the little evidence that was provided was untimely, biased, and unsubstantiated, such that *"a fact finder might legally conclude damages will"* [NOT] *"exceed the jurisdictional amount "* (M&R Objections, pg. 2; [NOT] inserted with emphasis by Plaintiff).

### More Illogical Inferences

As the M&R [DE -30] notes on pg. 9, *"Defendants contend that the amount in controversy exceeds $75,000 based on Plaintiff's allegations that MT International "was approximately a $4 billion dollar company" when it acquired Avidien, and that plaintiff seeks damaged based on her alleged entitlement to 20% or 55,000 shares in Avidien[DE-1] at 4."* Magistrate Judge Myers concluded in the M&R [DE -30 pg. 15] that *"Defendants have not provided a logical basis to support a reasonable inference that because MT International's*

3

*alleged value is four billion dollars, any entity it purchases must be worth approximately $375,000 or more.* [5] "

Regarding #1 M&R Objections, pg. 3:

> **"1. Plaintiff claims breach of contract and entitlement to actual damages equaling 20% owner equity in Avidien Technologies Inc. (Avidien") approximating 55,000 shares**
>
> **a. Plaintiff alleges she exchanged half of her ordinary salary for 20% or 55,000 shares of Avidien."**

Defendants make another illogical inference in their M&R Objections, pg.3, when they state that *"the reasonable inference of Plaintiff exchanging "approximately half of her usual compensation" for "approximately 55,000 company shares" is that the fair market value of the shares is approximately equal to at least half of Plaintiff's usual compensation, i.e. $60,000 at the least and $85,000 at the most."* Defendants incorrectly cite this illogical inference as a fact, and somehow reach a conclusion that *"a close inspection of the record reveals that the M&R erroneously finds that there is no "logical basis to support a reasonable inference..."* If Defendants' flawed "logic" were accurate, there would be no point of having the New York Stock Exchange (NYSE) or NASDAQ, as share prices will remain static and reflective of the purchase price - never rising nor falling - and capitalistic markets as we know them, would cease to exist.

> **b. Plaintiff alleges that Avidien is a growing liquid handling instrument company with sales in the million-dollar range**

Defendants repeatedly label Avidien as a "million-dollar range" company; however they rely almost exclusively on Mr. Kirtley's untested statement that the purchase price was *"in excess of $375,000"* (M&R Objections, Appendix A, # 4). Mr. Kirtley does not include the Avidien purchase agreement/sales contract from the Avidien acquisition on November 17, 2022 (which has been in his possession) according to him, for 2 years prior to Defendant's removal. One possible inference from Mr. Kirtley's choosing not to provide this court with detailed financial is that the Avidien sales contract and/or associated financial documents do not support Defendant's arguments, As *Strawn,* 530 F.3d at 297 held, inferences alone are insufficient; the removing party must provide specific, reliable evidence of value when demonstrating that removal jurisdiction is proper.

4

For the record, Defendants falsely state in their M&R Objections that *"Plaintiff also alleges that Avidien President and Founder Richard Cote ("Cote") informed her that they anticipated "a substantial influx of several million ..." Id. At 29.* Plaintiff actually stated, that*"**Mr. Langlois** confided in Plaintiff, revealing that Mr. Cote had recently engaged in significant investor meetings the week prior..." Id. At 29.*

### Evidence of microPro Price Drop

Plaintiff discovered a Mettler Toledo Rainin sponsored Google advertisement on January 2, 2025 that lists the Rainin microPro for $12,500 (Appendix 1) −20% less than the $15,999 price Defendants cite.in their M&R Objections, pg. 4. Additionally, Mettler Toledo Rainin has an Instagram promotion for 25% off, touting that *"bringing the cost down to $9700"* gets the microPro *"below Capex budgets"* (Appendix 2)

This significant decrease in Avidien's flagship product, the microPro's value, since Plaintiff's firing, suggests that Avidien's valuation may also be significantly lower than Defendants assert; undermining their claim that Avidien was growing or that Plaintiff's equity interest necessarily exceeds $75,000.

### Withheld Commissions, Vacation Pay, and a Demo Instrument

Defendants further argue that Plaintiff's withheld commissions, unused vacation, and a demonstration microPro push the total over $75,000. (M&R Objections, pg. 5.) However, as the M&R notes [DE -30 pg. 15]. Defendants offered **no** definitive valuation of these items. Conclusory allegations or unquantified categories cannot fulfill the removing party's burden. See *Scott v. Cricket Commc'ns, LLC*, 865 F.3d at 196 n.5 (4th Cir. 2017) *"(noting that even "[w]hen only one party submits evidence, we accept it as uncontroverted but must still test whether the responsible party has met its burden."* [DE-30, pg. 16]

Magistrate Judge Myers' determined there is no evidence to determine the value of Plaintiff's commissions. Defendants' cite Plaintiff's commission rate of 15% in their Objection to the M&R, pg. 5; however they did not supply any evidence reflecting Plaintiff's pending sales, if any, came to fruition after Plaintiff's firing, and if so, at what price. Plaintiff recalls her disappointment as the PPD labs she had been calling on were exhibiting buying signals for the microPro at near MSRP, and she learned that Mr. Cote had an established a microPro price agreement with PPD's VA lab that was well below MSRP. PPD contract pricing will need to be

5

substantiated; but based on Plaintiff's recollection the contracted price for the microPro was around $ 9- 10K.

It is plausible that Plaintiff's firing created confusion with customers who were amidst the purchasing process, and equally plausible that Defendants were unable to close some of Plaintiff's pending sales, or resorted to offering deep discounts on the microPro in order to do so. Defendant's provided no new evidence that could determine that commissions have any value as it pertains to Federal jurisdiction.

For purposes of the M&R only, Magistrate Judge Myers determined Plaintiff's value of three weeks' vacation to be approximately $5192.31, and monthly healthcare reimbursement to be $904.39. [DE-30, pg. 15,[6]]

### Plaintiff's Demo Instrument Irrelevant

Defendants falsely allege that Plaintiff's demonstration microPro is of controversy in this complaint, *ID* at 32. Plaintiff did not allege damages or made a statement of fact regarding a Claim against Defendants that includes the microPro demo device. Similarly, Defendants have not filed a Counterclaim against Plaintiff regarding the microPro demo instrument. Therefore, Defendants' attempt at including the demo instrument into the 75,000 calculation in unfounded.

. Nevertheless, Defendants' assignment of a $15,999 value to the used demo instrument is grossly overstated. Plaintiff has already shown that a new microPro device is on sale for $9700 (Appendix 2) and Appendix 3 shows used microPros list price on eBay between 4-5.5K *"or best offer"*, which means it likely sells for less than that.

Plaintiff's assessment is that the demo microPro instrument holds no monetary value to her. Plaintiff merely provided commentary that the instrument was *cautiously prepared for return to Defendant's possession..." ID* at 32

### Defendants continue making the same assertions pertaining to punitive damages

Defendants echo the arguments pertaining to punitive damages already reviewed and addressed by Magistrate Judge Myers (M&R Objections pg. 6), citing:

**II. Plaintiff also claims punitive damaged for fraud, anticipatory breach of contract and breach of the implied covenant of good faith and fair dealing**

Magistrate Judge Myers correctly applied *Matt v. Fifth Third Bank, Inc.* No. 5:18-CV-101-BR 2018 WL 3846310, at *3 *E.D.N.C. Aug.13, 2018) and concluded in the M&R [DE-30, pg. 15] that *"courts (including this one) have repeatedly ruled that a demand for punitive damages, without more, is insufficient to establish that the amount in controversy exceeds $75,000."*

Defendants also cite *Matt v. Fifth Third Bank, Inc.* and argue that *"there is much "more" to the record"* and reference to *"supra Section 1"* (M&R Objections pg. 6); however, Plaintiff has already addressed that Defendants' claims in *supra* Section 1: absence of actual evidence, contradictory claims; illogical inferences; and false inferences presented as fact. Overwhelmingly the evidence shows Defendants' claim that Magistrate Judge Myers misapplied *Matt v. Fifth Third Bank, Inc.* No. 5:18-CV-101-BR 2018 WL 3846310, at *3 *E.D.N.C. Aug.13, 2018) is misguided.

### Declaration of Mr. David E. Kirtley

Defendants submit a last minute declaration by Mr. David E. Kirtley, General Council-Americas, Metter Toledo, hereby referred to as "Appendix A" to supplement Defendant's Objection to Magistrate Judge Myer's M&R; however this declaration is vague, lacks supporting documentation, and is untimely. It does not cure Defendants' original failure to provide evidence at the time of removal was challenged.

#### 1.) Jurisdiction Is Determined at Removal

Federal subject-matter jurisdiction is determined at the time of removal. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008). Defendants did not submit this declaration when Plaintiff challenged removal, nor did they a submit the Avidien Purchase Agreement or any other similarly definitive evidence at that time. A belated, conclusory affidavit is insufficient to rectify this shortfall—particularly when Magistrate Judge Myers has already found the record lacking.

#### 2.) Inherent Bias / Conflict of Interest

Mr. Kirtley describes himself in the Declaration as someone who is *"familiar with the acquisitions of Mettler-Toledo"* (Appendix A, #2). In his role as General Council –

7

Americas, arguably the most senior position in Mettler-Toledo's in-house legal department, it is assumed that he is not just *"familiar"* with the Avidien acquisition, he likely spearheaded it, and held ultimate responsibility for it. His LinkedIn profile substantiates this assumption. Mr. Kirtley describes his duties as General Council - Americas for Mettler Toledo (parent company of Avidien) as *"Responsible for all legal matters throughout the Americas..."* (Appendix 4: Mr. Kirtley's Linked In bio.) By definition and the nature of holding the position of head of legal for the Americas, Mr. Kirtley is "the corporate face" of named Defendants who opposes Plaintiff in this litigation.

Therefore, while accepting Mr. Kirtley's declaration as uncontroverted, a declaration from a high-level, in-house attorney for the named Defendant, must be viewed with scrutiny and some degree of skepticism and caution, as inherently there is a potential for bias / conflict of interest, as Mr. Kirtley's duty and allegiance resides first and foremost with his employer, Mettler Toledo. Being a part of the corporate structure that ultimately stands to gain or lose from the outcome of this litigation, Mr. Kirtley has a direct professional and potentially financial stake in this outcome.

Mr. Kirtley is well positioned in Mettler Toledo, giving him the means and ability to access factual and detailed evidence pertaining to the Avidien acquisition, such as the Avidien sales contract, financial statements and records, and other specifics and details that could satisfy this court by the preponderance of the evidence that the amount in question is greater than $75,000; however in lieu of providing any of these tangible documents or evidence, Mr. Kirtley presents and omits the facts in such a way that favors his employer's legal position over transparency, providing an overarching, overly simplistic statement that is devoid of any real factual basis for determining federal jurisdiction. (Appendix A, #4):

*"...the purchase price for the acquisition of Avidien was in excess of $375,000 as documented in the Purchase Agreement executed by the parties, resulting in 20% being at least $75,000."*

8

While the court must accept Mr. Kirtley's statement as uncontroverted, the court still must test whether the responsible party has met its burden of proof by a preponderance of the evidence" (*Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196; pg. 16 M&R). Mr. Kirtley's one sided declaration only provides a glimpse, a very biased fraction of the full financial picture that is needed to make any reasonable inference or factual determination.

Despite his lack of specificity, Defendants argue that his declaration meets the $75,000 threshold; however this conclusory assertion—cleverly devoid of liabilities, offsets, or final contract terms—does not satisfy the preponderance standard. Mr. Kirtley's carefully crafted sentence did not assert that Avidien's equity value was in excess of $375,000 – he merely stated that *"purchase price"…was in excess of $375,000"* (Appendix A, #4). Plaintiff assumes Mr. Kirtley wants this court to infer from his statement that Avidien's equity is in excess of $375,000; however he did not supplement his declaration with any financials, purchase agreements or final contract that would substantiate reaching such an inference. He neglected to comment on Avidien's loans, debts, or other liabilities, and by stating, *"..20% being at least $375,000"* (Appendix A, #4) all that can be ascertained with any certainty from this statement, is that Mr. Kirtley correctly calculated a percentage - that 20% of $375K+ *"…is at least $75,000"*. (Appendex A, #4). Furthermore, in #3 of the declaration, he states that *"On November 17, 2022, Mettler –Toledo purchased all of the equity of Avidien Technologies, Inc. (hereinafter "Avidien"). I have reviewed the Complaint filed in this matter and am familiar with the allegation made by Plaintiff that she was promised 20% of Avidien."* Having reviewed Plaintiff's Complaint and overseeing the purchase of Avidien's equity, Mr. Kirtley fails to shed any light on Avidien's outstanding shares pre-acquisition– specifically, the 100,000 shares that Mr. Cote moved around and was purportedly confused about, and required 6 months (until June 2021) *"to take a look into it, and talk to the lawyers"* (Complaint, #58, #66) before Plaintiff's Avidien shares could be issued. Mr. Kirtley also fails to mention any other Avidien shareholders, their % ownership or # of shares, if these shares were common or preferred, or the price Mettler Toledo paid per share. Overall, Mr. Kirtley's declaration falls far short of providing any of the basic facts necessary to determine a clear financial picture of the Avidien acquisition, or that the amount in question for Federal jurisdictional purposes exceeds $75,000 by a preponderance of the evidence. In fact, further in this document, Plaintiff provides a case

9

scenario where Mr. Kirtley's statements are true, and the value of the amount in controversy is much less than $75,000.

At the heart of Plaintiff's critique of Mr. Kirtley's declaration, Mr. Kirtley conveyed only Avidien's purchase agreement price, and omitted any and all information pertaining to Avidien's debts and liabilities, which may have been significant according to the words and actions of Avidien President Mr. Cote. When Avidien's precarious financials are factored in combination with Mr. Kirtley's declaration, Avidien's debt and liabilities may very well reduce the amount in controversy below $75,000 or more. Avidien's financial shortcomings were cited numerous times in the Complaint (Compl. ¶¶ 15–18.) including:

- Mr. Cote *"expressed his desire for [Plaintiff] to join Avidien"* but that Avidien was not *"in a financial position to pay [Plaintiff] the $150-175 salary"* to which she was accustomed.
- Mr. Cote flew Plaintiff from NC to Boston for a face to face meeting, under false pretenses, that he agreed to Plaintiffs $150-175 base salary requirements. Avidien's recruiter, Mr. Darin Enfaradi, had previously verified salary requirements prior to scheduling the in-person meeting. Mr. Enferadi's text *"I want to make sure Avidien knows how much you will cost."* (Complaint, Appendix R)
- Defendant asks Plaintiff if there is any scenario in which she would accept $90K salary and on the spot, Mr. Cote agreed to Plaintiff's offer to exchange 90K for 20% owner equity in Avidien, complimenting creativity and mutual benefits of the agreement.
- Defendant preemptively fired Plaintiff as a means to avoid issuance of Plaintiff's 55,000 shares of Avidien/ 20% equity and final commissions

Mr. Cote and Mr. Langois' conduct hints at potential financial struggles; suggesting that Avidien desperately needed cash flow or was burdened by debt - or perhaps the desire to present a more attractive balance sheet pre-acquisition. It is reasonable to infer that it is plausible Mr. Cote prioritized preserving cash—and possibly avoided paying Plaintiff her due entitlements - in order to cover Avidien's general business and payroll expenses, including any loan or debt payments. These omissions may have made Avidien's finances appear more favorable to Mettler Toledo, or been an attempt an attempt to make Avidien's finances appear more favorable.. As Plaintiff demonstrates in the example below, when Avidien liabilities are included along with Mr. Kirtley's statements, it is just as likely that the amount in question is under $75,000.

## No Opportunity for Cross-Examination

Accepting Mr. Kirtley's statements as uncontroverted, "*...the purchase price for the acquisition of Avidien was in excess of $375,000..*" (Appendix A, #4) and agreeing that he correctly calculated that *20% of $375,000+ is at least $75,000*; in the absence of having the Avidien purchase agreement and final sales contract, accompanying profit and loss statements, balance sheets, sales reports, payroll reports, accounts payable reports, customer lists, and other details and financial statements that include Avidien's liabilities, Plaintiff must be able to cross examine Mr. Kirtley about his Declaration; as without documentation or the ability to ask him clarifying questions, it is just as likely that the amount in question is below $75,000.

Below is an example scenario whereby Mr. Kirtley's Declaration are true, Plaintiff's 3 weeks unused vacation is accounted for, Avidien's financial liabilities are exposed, and the amount in controversy falls well below $75,000 – even leaving margin to account for Plaintiff's healthcare reimbursement and other possible miscellaneous items that concern Defendants, and remain under the 75K.

**Example case scenario:**

*Mr. Cote quits his full time engineering job & takes out loan from a bank to pursue Avidien full time. He uses the loan for general, (non-capital) business expenses such as office & vehicle leases, sales calls/travel, and daily operations. He makes the minimum monthly loan payment on the loan, but around year he 3 has depleted the loan money.*

*Mr. Cote has made some microPro sales at a few high visibility clients and has many solid leads and prospects in his pipeline. He is sure the microPro will take off in the next couple of years, however at this time, getting early adopters of the microPro is slow and costly, and much more R&D is required to fix existing software bugs and to make the enhancements his prospects have reported as necessary for purchase. Mr. Cote borrows more money from his brother- in-law to sustain Avidien until some big wins come in, and promises to pay him back as soon as there is positive cash flow.*

*Unfortunately, a legal issue arises that halts R&D and results in an unexpected $90K patent purchase. Already leveraged, he uses credit cards to pay the $90K.*

*Mr. Cote brings on a business partner. He gives his partner 100,000 shares of Avidien and he retains 175,000 shares of the 275,000 total shares. They work to upgrade the software and functionality of the microPro. Covid strikes, and microPro sales start coming in from labs doing Covid testing. Mr. Cote feels it is the right time to hire a sales professional sales person to lead microPro's sales efforts, acknowledging the need to get the microPro into labs doing other things than Covid testing.*

*Avidien's recruiter finds Plaintiff on Linked in; & facilitates the process to a job offer. Despite knowing Plaintiff's salary requirements, Mr. Cote believes Plaintiff can take the microPro to the next level. Avidien cannot afford Plaintiff's salary, and Mr. Cote excitedly accepts Plaintiff's offer to accept 90K salary in exchange for 20% owner equity of Avidien.*

*As an equity owner, Plaintiff works hard high to bring in new business and high profile accounts, making Avidien ripe for purchase. There are rumors of seed money; opportunity abounds - that is until June 2021*

11

*when Plaintiff's Avidien shares come due. Plaintiff is unexpectedly fired, without receiving her due entitlements. Then, Mettler Toledo Rainin purchased Avidien.*

**Example Financials:**

| | | |
|---|---|---|
| Avidien Purchase agreement price: | **$376K** | ✓ Mr. David Kirtley's declaration |
| - 20% of $376= $75,200 | | ✓ Mr. David Kirtley's declaration |
| Avidien Bank loan | $(200)K | |
| Personal loan from family | $(50)K | |
| Credit card debt/interest (patent) | $(98)K | |
| Avidien net equity: | $28,000 | |
| | | |
| Plaintiff's 20% of $28,000 | **$5,600** | |
| Plaintiff's 3 wks. vacation | **$5,192.31** | |
| Amount in controversy: | **$10,792.31** | **$64,207.69 below Federal threshold for diversity* |

Bearing the burden of proof, Mr. Kirtley could have provided the purchase agreement, balance sheet, and other pertinent financial documents from Avidien's sale; however he chose to be vague without providing any documentation to support his statements. As Plaintiff has demonstrated, introducing Defendant's liabilities significantly alters the balance sheet and overall financial picture. As shown in the above example, Avidien is purchased for more than $375,000 however after Avidien's liabilities are factored in, Avidien's net equity is $28,000, and Plaintiffs 20% owner equity is equivalent to $5,600. Plaintiff's unused vacation was calculated in the M&R as $5192.31, bringing the amount at controversy for purposes of Federal jurisdiction to $10,792.31 – $64,207 below the $75,000 limit.

Defendants' state on pg. 3 of their objection to the M&R that *"while neither Plaintiff nor Defendant has alleged the sales price or company evaluation of Avidien, such a precise evaluation is not necessary..."* this echoes the flawed position in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293 (4th Cir. 2008), where a similar lack of precise evidence led to remand.

### Defendants' Burden of Proof

Magistrate Judge Meyers properly concluded Defendants failed to show the amount in controversy Exceeds $75,000. Under *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014), Defendants must prove by a preponderance that Plaintiff's claims exceed $75,000. (M&R at 15–16.). Speculative and overly simplistic statements about Avidien's worth do not meet this standard. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293 (4th Cir. 2008) demonstrates that such post hoc, nonspecific attestations fail to meet a removing defendant's heavy evidentiary

12

burden—especially when they had ample opportunity to produce the fully executed sale contract or other official documents. Finally, Plaintiff provided a realistic example of how Mr. Kirtley's Declaration statements are true, and yet the controversial value is far less than $75,000.

Because of the lack of evidence, the M&R correctly recommended that Plaintiff's motion to remand be GRANTED and defendants' motion to dismiss be DENIED AS MOOT. Defendants' Objection to M&R did not provide any evidence that the M&R was lacking or that a misapplication of the law occurred, and Mr. Kirtley's lack of transparency, bias to his employer (named Defendants') and withholding of important details and evidence pertaining to the Avidien purchase, provided more questions than answers.

For the reasons stated above, Plaintiff respectfully requests that this Court:
**OVERRULE** Defendants' Objections;
**ADOPT** the Magistrate Judge's Memorandum and Recommendation [DE-30] in its entirety;
**GRANT** Plaintiff's Motion to Remand [DE-21] and **REMAND** this case back to state court; and
**DENY AS MOOT** Defendants' Motion to Dismiss [DE-8].

Respectfully submitted this 7th day of January, 2025.