IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-402-M-BM

| | |
|---|---|
| PAMELA LETTS, <br><br> Plaintiff, <br><br> v. <br><br> AVIDIEN TECHNOLOGIES, INC., METTLER-TOLEDO RAININ, LLC, and METTLER-TOLEDO INTERNATIONAL INC., <br><br> Defendants. | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on plaintiff's motion to remand this case to state court. [DE-21]. Plaintiff filed supplemental materials [DE-22] and a supplemental brief [DE-23] in support of her motion to remand. Defendants, Avidien Technologies, Inc.[1] ("Avidien"), Mettler-Toledo Rainin, LLC ("MT Rainin"), and Mettler-Toledo International, Inc., ("MT International," and collectively "defendants"), responded in opposition. [DE-27].

This matter is also before the court on defendants' joint motion [DE-8], with a memorandum in support thereof [DE-9], to dismiss plaintiff's complaint [DE-1-3] pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7.1. Plaintiff filed a response in opposition [DE-17; 17-1], to which defendants replied [DE-26].

On December 16, 2024, the undersigned issued a memorandum and recommendation ("M&R") recommending that the court (i) grant plaintiff's motion to remand this matter to state court [DE-21] and (ii) deny defendant's motion to dismiss [DE-8] as moot. *See* [DE-30] at 16. Defendants timely objected to the recommended remand [DE-31] ("defendants' objections"),

---

[1] Avidien Technologies, Inc. converted its business form into "Avidien Technologies, LLC" on December 29, 2023. [DE-1-6] at 2.

and filed an affidavit of David E. Kirtley, General Counsel-Americas of MT Rainin, [DE-32] (the "Kirtley affidavit") in support thereof. On January 7, 2025, plaintiff filed a response to defendants' objection. [DE-33].

On January 14, 2025, Chief United States District Judge Richard E. Myers II recommitted this matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C), with specific instructions "to consider whether the exhibit included with [d]efendants' objection, DE 32, alters [the undersigned's] analysis with regard to the amount in controversy in this action." [DE-34] at 1-2.

For the reasons set forth below, the undersigned finds that the Kirtley affidavit does change the analysis with regard to the amount in controversy in this action, and RECOMMENDS that plaintiff's motion to remand [DE-21] be DENIED. Further, the undersigned RECOMMENDS that defendants' joint motion to dismiss [DE-8] be GRANTED.

## I. BACKGROUND

Except as set forth herein, the undersigned incorporates by reference its statement of the factual background and procedural history of this case in the original memorandum and recommendation [DE-30].

## II. MOTION TO REMAND [DE-21]

A.  **Applicable legal standards for removal and remand**

"Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The presumption is that a federal court lacks jurisdiction in a particular case unless it is demonstrated that jurisdiction exists. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895). The burden of establishing subject matter jurisdiction rests on the party invoking

jurisdiction, here, defendants. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The filing seeking federal jurisdiction must affirmatively allege the grounds for jurisdiction. *Bowman*, 388 F.2d at 760. If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). One basis for subject matter jurisdiction, so-called federal question jurisdiction, is that a claim arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Diversity jurisdiction exists in "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ." 28 U.S.C. § 1332(a).

A defendant or defendants in a state court action may remove a matter to federal court if the district court would have had original jurisdiction had the action been filed there in the first instance. 28 U.S.C. §§ 1441(a), 1446(a). The signed notice of removal must be filed within 30 days of receiving the initial state court pleading and need contain nothing more than "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." *Id.* at 1446(a); *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (noting that a notice of removal "need only allege federal jurisdiction with a short plain statement—just as federal jurisdiction is pleaded in a complaint"). However, "[t]he removal statutes are to be strictly construed against removal, with any doubt in a particular case to be resolved against removal." *Storr Office Supply v. Radar Business Systems*, 832 F.Supp. 154, 156 (E.D.N.C. 1993). Additionally, "when removal is challenged, the removing party bears the burden of demonstrating that removal jurisdiction is proper." *Strawn*, 530 F.3d at 297.

In determining the propriety of a petition for removal, a court will generally restrict itself to "the plaintiff's pleading." *See Griffin v. Ford Consumer Fin. Co.*, 812 F. Supp. 614, 616

(W.D.N.C. 1993) (citing *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1950). The Supreme Court has noted that "as 'masters of their complaint' plaintiffs are free to purposely omit information that would allow a defendant to allege the amount in controversy with pinpoint precision." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005). When a pleading fails to specify the damages sought, "federal courts have determined the amount of controversy by considering all evidence bearing on the issue." *Lawson v. Tyco Elecs. Corp.*, 286 F. Supp. 2d 639, 641 (M.D.N.C. 2003). When a plaintiff contests a defendant's allegation with respect to the amount in controversy, "§ 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88, 135 S. Ct. 547, 553–54, 190 L. Ed. 2d 495 (2014) (alterations in original) (citing 28 U.S.C. § 1446(c)(2)(B)).[2]

**B. Analysis**

In the earlier M&R, the undersigned found that while defendants had established diversity of citizenship ([DE-30] at 14), they had failed to establish that the amount in controversy exceeds $75,000.00 by the preponderance of the evidence (*id.* at 16). As noted

---

[2] While *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. 81, was decided in the context of the removal requirements of the Class Action Fairness Act of 2005 ("CAFA"), numerous courts in this circuit, including this one, have applied the preponderance of the evidence standard to removals alleging jurisdiction under 28 U.S. Code § 1332(a). *See L. Offs. of Michele A. Ledo, PLLC v. BellSouth Advert. & Publ'g Corp.*, No. 5:07-CV-236-BO, 2008 WL 11429808, at *2 (E.D.N.C. Mar. 27, 2008) ("Defendants must prove the amount-in-controversy requirement by a preponderance of the evidence.); *Mortg. Guar. Ins. Corp. v. Rivera*, No. 319CV00169FDWDCK, 2019 WL 2273754, at *3 (W.D.N.C. May 28, 2019) ("If the plaintiff's complaint does not allege a specific amount of damages, 'the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000].'") (alterations in original) (quotations omitted); *Meletiou v. Fleetpride, Inc.*, No. 322CV00666FDWDSC, 2023 WL 2468994, at *2 (W.D.N.C. Mar. 10, 2023) ("The party asserting subject matter jurisdiction based on diversity must prove the amount in controversy requirement by a preponderance of the evidence.").

4

above, the Kirtley affidavit [DE-32] was submitted as an exhibit to defendants' objection [DE-31] to the undersigned's M&R [DE-30].

In his affidavit, Mr. Kirtley, the General Counsel-Americas of MT Rainin, provides that "[b]ased on [his] knowledge of the purchase of Avidien by [MT Rainin], the purchase price for the acquisition of Avidien was in excess of $375,000, as documented in the Purchase Agreement executed by the parties, resulting in 20% being at least $75,000." [DE-32] at 1. The undersigned previously indicated that an equity value for Avidien of $375,000 or more would likely support an amount in controversy of over $75,000 based on plaintiff's contention that she is entitled to a 20% stake in Avidien, in addition to certain other damages. [DE-30] at 15, n. 5; *see also* [DE-1] at 4.

In her response to defendants' objections, plaintiff argues that defendants' "arguments remain speculative and unsubstantiated, and the late-filed declaration from in-house counsel fails to cure these deficiencies." [DE-33-1] at 2. Specifically, plaintiff contends that the Kirtley affidavit "is vague, lacks supporting documentation, and is untimely." [DE-33-1] at 7. She notes that:

> while accepting Mr. Kirtley's declaration as uncontroverted, a declaration from a high-level, in-house attorney for the named [d]efendant, must be viewed with scrutiny and some degree of skepticism and caution, as inherently there is a potential for bias / conflict of interest, as Mr. Kirtley's duty and allegiance resides first and foremost with his employer, [MT Rainin].

[DE-33-1] at 8.

Plaintiff admits that she has provided no evidence to contradict the Kirtley affidavit. *See id.* ("while accepting Mr. Kirtley's declaration as uncontroverted . . ."). Plaintiff has also not cited any legal authority for the proposition that an affidavit provided under penalty of perjury falls short of representing viable evidence to support an amount in controversy or that it may not

be submitted after the initial removal. Numerous courts in this circuit, including this court, have considered affidavits or stipulations by a party as to the amount in controversy where the complaint is otherwise ambiguous on this question. *Griffin v. Holmes*, 843 F. Supp. 81, 88 (E.D.N.C. 1993) (accepting "the plaintiff's stipulation that the total amount of compensatory and punitive damages sought by his complaint is less than $50,000."); *Lawson v. Tyco Elecs. Corp.*, 286 F. Supp. 2d 639, 642 (M.D.N.C. 2003) ("[S]tipulation has been used in certain cases where the amount in controversy is 'indeterminate.'") (citations omitted); *Powell v. CSX Transportation, Inc.*, No. 2:18-CV-01180, 2019 WL 1407432, at *2 (S.D.W. Va. Mar. 28, 2019); (finding that defendant's affidavit "proved, by a preponderance of the evidence, that the amount in controversy exceeds $75,000."); *see also Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 299 (4th Cir. 2008) (relying on an unchallenged affidavit in establishing the amount in controversy in a case brought under the Class Action Fairness Act).

Here, defendants have provided an affidavit, which suggests that plaintiff's requested damages of 20% of the value of Avidien, combined with the other contested items including withheld commissions, vacation pay, healthcare reimbursement, and a demo instrument, raise the amount in controversy above $75,000. Plaintiff has presented no evidence to the contrary, but offers conjecture that "liabilities, offsets, or final contract terms" could lead to the net equity value of Avidien, and thereby the amount in controversy, being under $75,000 (*id.* at 9). The hypothetical scenario plaintiff provides to illustrate the same (*id.* at 11-12) is devoid of any factual support beyond conclusory inferences that the same financial difficulties that prevented defendants paying her requested salary could also depress the equity value of Avidien below its purchase price.

Accordingly, the undersigned finds that defendants have met their burden of establishing

6

that the amount in controversy is greater than $75,000 by a preponderance of the evidence. On this basis, the undersigned RECOMMENDS that plaintiff's motion to remand [DE-21] be DENIED.

### III. <u>MOTION TO DISMISS [DE-9]</u>

A.      Applicable legal standards for a motion to dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim entitling [them] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id*.; *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) ("[I]t is not our task at the motion-to-dismiss stage to determine 'whether a lawful alternative explanation appear[s] more likely' from the facts of the complaint." (quoting *Houck*

7

*v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015))), *as amended on reh'g in part* (Oct. 29, 2015).

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (noting that the court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 556 U.S. at 680-81. Complaints filed by *pro se* plaintiffs are entitled to liberal construction. *Kerr v. Marshall Univ. Bd. of Governors,* 824 F.3d 62, 72 (4th Cir. 2016) ("We are mindful of our obligation to liberally construe a *pro se* complaint."); *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) ("We must construe *pro se* complaints liberally . . . and liberal construction of the pleadings is particularly appropriate where, as here, there is a *pro se* complaint raising civil rights issues." (alteration in original) (citations omitted)); *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989) ("*Pro se* complaints are to be read liberally").

**B.     Analysis**

In the joint motion to dismiss, defendants request that this court dismiss plaintiff's complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Civil Rule 7.1, for the following reasons:

1. All of [p]laintiff's claims are barred by the expiration of the statute of limitations;
2. Plaintiff has failed to sufficiently allege breach of contract due to the lack

> of the formation of a contract or in the alternative a breach of any term of the contract;
> 3. Plaintiff has failed to sufficiently allege anticipatory breach of contract due to the lack of the formation of a contract or in the alternative a breach of any term of the contract;
> 4. Plaintiff has failed to sufficiently allege breach of the implied covenant of good faith and fair dealing as it is not a separate cause of action and due to the lack of the formation of a contract or in the alternative a breach of any term of the contract;[] and
> 5. Plaintiff has failed to sufficiently allege fraud with particularity in that no false representations or deception is supported.

[DE-8] at 1-2.

In response to defendants' argument regarding the expiration of the statute of limitations, plaintiff appears to assert that (i) June 7, 2024 should be considered her filing date for purposes of the statute of limitation, *i.e.*, two days prior to the expiration of the statute of limitations, or that, (ii) she should benefit from equitable tolling in light of technical issues with Odyssey, the electronic-filing ("e-filing") system of the North Carolina Courts ("Odyssey" or "Odyssey system"), on June 7, 2024. *See* [DE-17-1] at 2-8.

Typically, potential defenses are not raised in a Rule 12(b)(6) motion. *Brooks v. City of Winston-Salem,* 85 F.3d 178, 181 (4th Cir. 1996). But a statute of limitations defense may be raised in a Rule 12(b)(6) motion where that defense appears clearly on the face of the complaint. *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993)). For the reasons discussed below, the court recommends that the complaint be dismissed because it is barred by the expiration of the statute of limitations. Accordingly, the court does not consider defendant's other arguments.

1. **Choice of law**

"Federal courts sitting in diversity apply federal procedural law and state substantive law." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013)

(citing *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 416 (1996)). With respect to substantive law, "[a] federal court sitting in diversity is bound to follow the choice of law rules of the forum state," which is North Carolina here. *ESA, Inc. v. Walton Constr. Co., Inc.*, No.: 7:04-CV-75-F(3), 2007 WL 9718764, at *1 (E.D.N.C. Mar. 16, 2007) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941)).

The substantive issues in this case largely arise from a contract between plaintiff and defendants. The agreement does not contain a choice of law provision. *See* [DE-1-3]. "Under North Carolina choice of law rules, substantive questions of contract construction and interpretation generally are governed by the law of the state where the contract was made." *Id.* (citing *Tanglewood Land Co., Inc. v. Byrd*, 261 S.E.2d 655, 656 (N.C. 1980)). Plaintiff alleges that she resides in and conducted her business activities based in North Carolina. *See generally* [DE-1-3]. Both parties cite North Carolina law in support of their respective positions. *See* [DE-9] at 7; [DE-17-1] (exclusively referencing North Carolina law). "Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 782 (4th Cir. 2023) (quoting *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995)); *see also id.* at 781-82 ("Because both parties consented to the choice of North Carolina law to govern this action and AXA waived any argument that another state's law should be applied, the district court erred when it engaged in its own choice-of-law analysis and decided to apply [another state's] law."). Accordingly, the undersigned finds that North Carolina substantive law is applicable to the instant dispute.

## 2. Statutes of limitation[3]

Plaintiff brings four claims in her complaint: (1) breach of contract; (2) fraud; (3) anticipatory breach of contract; and (4) breach of the implied covenant of good faith and fair dealings. *See* [DE-1-3] at 33-41. In North Carolina, the statute of limitations for breach of contract, fraud, anticipatory breach of contract, and breach of the implied covenant of good faith and fair dealings is, in each case, three years. *See* N.C.G.S. §§ 1-52(1) (three-year statute of limitations for actions arising out of a contract, with limited exceptions not applicable here), (9) (three-year statute of limitations for fraud).

"A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985). For breach of contract claims, "[t]he statute begins to run on the date the promise is broken." *Id.* For fraud claims, "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C.G.S. §§ 1-52(9); *Taylor v. Bank of Am., N.A.*, 385 N.C. 783, 789, 898 S.E.2d 740, 746 (2024).

The parties agree that plaintiff's claims accrued on June 9, 2024, when defendants terminated plaintiff's employment. *See* [DE-1-3] at ¶9; [DE-9] at 7-8; [DE-17-1] at 3. Applying the three-year statutes of limitation to the date upon which plaintiff's claims accrued results in a bar to suit becoming effective on June 9, 2024. *See* [DE-1-3] at ¶9.

Plaintiff does not dispute that the statutes of limitation expired on June 9, 2024. *See* [DE-17-1] at 3 ("[T]he statute of limitations for [p]laintiff's claims would expire on June 9, 2024"). She instead contends that (i) June 7, 2024 should be considered her filing date for purposes of the

---

[3] The court finds that the date upon which plaintiff's statute of limitations expired is apparent on the face of her complaint for the reasons discussed herein. Therefore, defendants' statute of limitations defense under Rule 12(b)(6) as properly before the court at this juncture. *See Brooks,* 85 F.3d at 181.

statutes of limitation, or that, (ii) she should benefit from equitable tolling in light of technical issues she experienced with the Odyssey system on June 7, 2024.  *See* [DE-17-1] at 2-8.

Plaintiff alleges that she attempted to file her claim in state court on Friday, June 7, 2024.[4]  [DE-1-5] at 2; [DE-17-1] at 2.  She reports that she experienced technical difficulties with the Odyssey system about which she called technical support to resolve.  [DE-1-5] at 2; [DE-17-1] at 2.  Plaintiff was allegedly informed by the Odyssey helpdesk that "an internal issue within Odyssey was preventing the [e-filing] system from accepting [plaintiff's] submission." *Id.* at 4.  At 3:54 p.m., on June 7, 2024, after working with the help desk, plaintiff submitted her cover sheet, claim, and summons as one document.  [DE-1-5] at 2.

On Tuesday, June 11, 2024, when plaintiff next logged into the portal, she read a message from the Wake County District Court advising her that her filing had been returned, as the complaint, cover sheet, and civil summons needed to submitted as separate filings, which she successfully did on the same day.  [DE-1-5] at 2-3.  Accordingly, plaintiff's state court complaint shows that it was electronically filed on June 11, 2024.  *See* [DE-1-3].  Plaintiff asserts "that her claims were timely filed within the [statute of limitations] on June 7th, 2024, despite technical challenges encountered with the Odyssey electronic filing system."  [DE-17-1] at 2.  "Plaintiff acknowledges that a resubmission of [her c]omplaint documents at the [Wake County District Court's] behest, resulted in a new [c]omplaint file with a new time stamp of June 11th, which is outside the 3 year statutory period."  *Id. at 2*.  Plaintiff argues that "[t]his would not have occurred had the NC [e-filing] system Odyssey been functioning properly and allowed [p]laintiff to file her [c]omplaint between 8-9 AM on June 7th, as she first attempted."  *Id.*

With respect to the statute of limitations, defendants argue that plaintiff's complaint was

---

[4] The court takes judicial notice of the fact that June 7, 2024, was a Friday.

filed on June 11, 2024, as evidenced by the time-stamp on the complaint was, therefore, untimely filed. [DE-9] at 8-9. Specifically, defendants contend that "'submitting' a [c]omplaint is not the same as the [c]omplaint being 'filed.'" [DE-9] at 8. Defendants also claim that because "there were no 'extraordinary circumstances,' and it cannot be said that [p]laintiff 'diligently pursued her rights,' as such, equitable tolling is inapplicable." *Id.* at 10.

The General Rules of Practice for the Superior and District Courts of North Carolina that were in effect at the time plaintiff filed her complaint[5] (the "General Rules of Practice") provide that "[a] document is filed when it is received by the court's electronic-filing system [*i.e.*, Odyssey], as evidenced by the file stamp on the face of the document." General Rules of Practice 5(b)(7). Thus, a complaint is considered to have been "filed," when it is "received" by the electronic system. General Rule of Practice 5(b)(4). Lest any ambiguity arise about whether a complaint is considered "received" purely by virtue of being submitted by a prospective plaintiff, the rules clarify that the complaint will only be considered "received" as of the time "evidenced by the file stamp on the face of the document." *Id.* The General Rules of Practice also explain that if "a document that has been filed electronically . . . is prohibited by . . . rule from being filed with the court . . . (i) the document will be treated as if it had never been filed with the court." General Rule of Practice 5(b)(7).

Here, plaintiff's state complaint bears a file stamp, which reads "Electronically Filed Date 6/11/2024 1:21 PM Wake County Clerk of Superior Court." [DE-1-3] at 2. At 4:10 pm on June 7, 2024, approximately 16 minutes after plaintiff submitted her complaint for filing, it was returned to her by the Wake County District Court via email. *See* [DE-1-5] at 3. The rejection email stated, "[d]ocuments prohibited by rule or statute from being filed with the court" and

---

[5] Codified on February 13, 2023.

13

Case 5:24-cv-00402-M-BM    Document 35    Filed 01/30/25    Page 13 of 19

specifically that "[t]he Court will need a Complaint to begin your action. You will need to file this Cover Sheet as well as the Complaint and a Civil Summons. Thank you!" *Id.*

Therefore, according to the General Rules of Practice, plaintiff's complaint was "filed" at the time evidenced by the Wake County District Court time stamp of 1:21 p.m. on June 11, 2024. *See* General Rule of Practice 5(b)(4). Any previous submission plaintiff made should properly be considered "as if it had never been filed with the court." General Rule of Practice 5(b)(7). Accordingly, the undersigned does not find that plaintiff submitted her complaint within the relevant statutes of limitations for her claims.

Plaintiff's tolling argument appears to suggest that if the Odyssey system had not suffered from technical difficulties, she would have made her initial filing on the morning of June 7, 2024, which would have allowed her to receive and respond to any inadequacies with her filing on June 7, 2024, before the statute of limitations expired.

The Fourth Circuit's finding in 2013 remains valid that there is "no controlling decision addressing equitable tolling" in North Carolina state law jurisprudence. *See Aikens v. Ingram*, 524 F. App'x 873, 881 (4th Cir. 2013) (unpublished); *see also Staffing Advantage LLC v. Definitive Staffing Sols., Inc.*, No. 7:20-CV-00150-M, 2021 WL 2426340, at *7 (E.D.N.C. June 14, 2021) (citing *Aikens* and noting no controlling North Carolina jurisprudence on equitable tolling); *Chi v. N. Riverfront Marina & Hotel LLLP*, No. 21 CVS 4611, 2023 WL 4843042, at *10 (N.C. Super. July 27, 2023), *appeal dismissed sub nom. He Chi v. N. Riverfront Marina & Hotel LLLP* (N.C. Super. 2023) (referencing equitable tolling, but failing to cite any North Carolina Supreme Court cases that have been decided on equitable tolling since *Aikens*). When predicting how the Supreme Court of North Carolina, as the state's highest court, would rule on this legal concept, the *Aikens* court found that "[t]ime frames may be tolled where equitable

14

considerations justify their suspension.'" *Aikens*, 524 F. App'x at 881 (4th Cir. 2013) (alterations in original) (quoting *Fairway Outdoor Advert. v. Edwards*, 197 N.C. App. 650, 658, 678 S.E.2d 765, 771 (2009)).

Specifically, applying the factors developed in *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 429-30, 85 S. Ct. 1050, 1055, 13 L. Ed. 2d 941 (1965), the *Aikens* court engaged in its equitable tolling analysis by considering whether (1) the defendants received timely notice of the claims, (2) whether the defendant have been prejudiced by the delay of the litigation and (3) whether the plaintiff acted with diligence. *Id.* at 879-83; *see also Staffing Advantage LLC*, No. 7:20-CV-00150-M, 2021 WL 2426340, at *7 (citing *Aikens'* use of *Burnett* factors for considering equitable tolling under North Carolina state law).

The undersigned notes that despite the technical difficulties in the Odyssey system, plaintiff was able to submit a filing on June 7, 2024 at 3:54 p.m. Accordingly, the final cause of plaintiff's untimely filing was not the technical issues in the electronic filing system, but plaintiff's lack of familiarity with the filing requirements of the Wake County District Court.

Due to the untimely filing, the summons to defendant was not issued until June 11, 2024. *See* [DE-1-4]. Unlike the scenario in *Aikens* in which the defendants still had timely notice of plaintiff's claim, *see Aikens*, 524 F. App'x at 883, defendants here did not have notice of plaintiff's complaint until after the statute of limitations had expired. Accordingly, there are no factors, which mitigate the prejudice to defendants.

With respect to diligence, the undersigned must predict how the Supreme Court of North Carolina would apply equitable tolling to the question of a failure to timely file a claim in light of a temporary delay created by technical challenges and a lack of familiarity with procedural filing requirements. *Cf. Aikens*, 524 F. App'x at 883. In examining how other courts have

15

answered this question, a general consensus emerges that a lack of familiarity with procedural requirements does not constitute a basis for equitable tolling. *See United States v. Oriakhi*, 394 F. App'x 976, 977 (4th Cir.2010) (unpublished decision) (remarking that "unfamiliarity with the legal process or ignorance of the law cannot support equitable tolling"); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (noting that ignorance of the law is not a basis for equitable tolling); *Bryant v. United States*, No. 5:03-CR-187-BO, 2014 WL 5039592, at *2 (E.D.N.C. Oct. 8, 2014) ("[M]isunderstanding or unfamiliarity with the law cannot excuse [a petitioner's] failure to timely file a § 2255 motion").

Specifically, plaintiff's lack of familiarity with the Wake County District Court's electronic filing and formatting requirements are matters, which plaintiff could have cured through prior research or earlier filing. *See Perry v. Accurate Staffing Consultants*, *Inc.*, 2010 WL 2650881, at *4 (W.D.N.C. June 30, 2010) (holding that "counsel's unfamiliarity with an electronic filing system that leads to the mistaken belief that a complaint has been timely filed is not an extraordinary circumstance that warrants equitable tolling"); *see also Ley v. Charles Schwab & Co., Inc.*, No. 18-CV-02207-MSK-STV, 2019 WL 2357064, at *3 (D. Colo. June 4, 2019) ("[U]nfamiliarity with the court's electronic filing interface or incorrectly-formatted pleadings being rejected by the electronic filing system that are within the control of Ms. Ley's counsel and therefore do not satisfy the equitable tolling test."); *Towner v. Astrue*, 2011 WL 3875425, at *7 (N.D. Iowa Aug. 31, 2011) (noting that "miscommunication between [plaintiff's] counsel and the clerk's office, and unfamiliarity on the part of [plaintiff's] counsel with electronic filing, are not extraordinary circumstances entitling [plaintiff] to a tolling of the limitations period").

With respect to plaintiff's assertion that she would have been able to cure the deficiencies

16

in her filing absent the technical problems in Odyssey, the court notes that plaintiff's decision to wait until the end of the statute of limitations period to file her complaint carried with it associated risks, which plaintiff could have avoided by submitting her filing on an earlier date. *See Ley*, 2019 WL 2357064, at *3 ("Other types of technical difficulties, such as transmission delays or intermittent server resets or reboots, might be outside counsel's control but are so common in the everyday use of technology that they, too, could not constitute "extraordinary" circumstances warranting equitable tolling."); *see also United States v. Williams*, No. 3:07CR123-HEH, 2011 WL 6842991, at *2 (E.D. Va. Dec. 29, 2011) (noting the petitioner's failure "to explain how his medical condition was so debilitating, before or after July of 2009, as to prevent him from filing his § 2255 Motion."). While not dispositive to the question of tolling, the undersigned notes that the Wake County District Court's message advising plaintiff of the deficiencies in her submission was sent at 4:10 p.m. on June 7, 2024 (*see* [DE-1-5] at 3), which indicates that plaintiff had the opportunity to cure the deficiencies in her submission on June 7, 2024, before the statutes of limitation lapsed, which she did not exercise.

Accordingly, the undersigned finds that the Supreme Court of North Carolina would likely not consider the circumstances of plaintiff's case a basis for equitable tolling. *See Taylor*, 385 N.C. at 791 ("While civil causes of action exist to provide remedies to aggrieved parties, statutes of limitations operate inflexibly and without reference to the merits of a cause of action."); *Glynne v. Wilson Med. Ctr.*, 236 N.C. App. 42, 53, 762 S.E.2d 645, 652 n.5 (2014) (rejecting plaintiff's argument that "it would be inequitable to preclude [p]laintiff from asserting the claims at issue in this case because she filed her complaint approximately one week late."); *see also Yarborough v. Burger King Corp.*, 406 F. Supp. 2d 605, 608 (M.D.N.C. 2005) (declining to apply equitable tolling where plaintiffs' Title VII claims were filed two days late);

17

*Douglas v. U.S. Airways Group, Inc.,* No. 3:10cv42, 2011 WL 1769747, at *5 (W.D.N.C. 9 May 2011) (dismissing *pro se* plaintiff's Title VII action where complaint was filed one day late and there was no evidence that the Clerk's office was closed or inaccessible); *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000) ("Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere [because] statutes of limitation protect important social interests."); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) (holding that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants," and that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.").

It is therefore RECOMMENDED that defendant's motion to dismiss [DE-8] plaintiff's complaint as untimely be GRANTED.

### IV. <u>CONCLUSION</u>

For the reasons stated above, the undersigned RECOMMENDS that plaintiff's motion to remand [DE-21] be DENIED; that defendants' motion to dismiss [DE-8] be GRANTED; and that plaintiff's complaint [DE-1-3] be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the respective parties or, if represented, their counsel. Each party shall have until **February 13, 2025**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation;

receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or February 25, 2025**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 30th day of January, 2024.

_____
Brian S. Meyers
United States Magistrate Judge